FILED

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

2014 FEB -4 P 2:45

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| CALVIN R. MARTIN, | ) |
| Plaintiff, | ) |
| v. | ) |
| RODDON III, LLC, | ) Civil Action No. 1:14 CV114 TSE/TRJ |
| Defendant. | ) |
| | ) JURY DEMAND |

## COMPLAINT

Calvin R. Martin ("Plaintiff" or "Mr. Martin"), by and through his undersigned Attorneys, brings this action against RodDon III, LLC ("the Defendant") under the Americans with Disabilities Act. Plaintiff seeks declaratory and injunctive relief as well as compensatory damages, and alleges as follows:

## PRELIMINARY STATEMENT

Plaintiff was employed by Defendant as a Center Director at a Huntington Learning Center ("HLC") franchise in Northern Virginia that is owned and operated by the Defendant. Mr. Martin's performance met the legitimate expectations of his employer, but he was nonetheless terminated shortly after disclosing his human immunodeficiency virus ("HIV") status to his supervisor. Mr. Martin's termination was discriminatory in nature and violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq., ("ADA"), which prohibits a covered employer from discharging a qualified employee because of his or her disability. To

state a claim of discriminatory discharge under the ADA, a plaintiff must be a member of a protected class discharged from his or her job while performing at a level that met the employer's legitimate expectations and under circumstances that raise a reasonable inference of unlawful discrimination.

## NATURE OF THE ACTION

1. Mr. Martin held the position of Center Director at the Lake Ridge Huntington Learning Center, 12379 Dillingham Square, Lake Ridge, Virginia, 22192 from March 12, 2012, to May 22, 2012. Defendant unlawfully discriminated against Mr. Martin by terminating him because of his disability. Mr. Martin was a capable employee and Defendant's decision to discharge him was motivated by the discovery that he has HIV.

2. On or about May 14, 2012, Mr. Martin disclosed his HIV status in confidence to Defendant's Regional Manager, Susan Fowler, because he needed to make a few adjustments to his heavy workload for health-related reasons.

3. On or about May 22, 2012, Mr. Martin was fired from his job as Center Director at the Lake Ridge Learning Center. During the meeting in which he was fired, Mr. Martin learned that Ms. Fowler had disclosed his HIV status to Roderick and Donna Isler without his permission. The Islers informed Mr. Martin that he was being fired because of his illness and their perception that he lacked energy as a result. Mr. Isler expressed that RodDon would not knowingly continue to employ an individual with HIV.

4. Mr. Martin brings this lawsuit against Defendant pursuant to Section I of the Americans with Disabilities Act, 42 U.S.C. §§ 12111-12117, as amended in 2008, to remedy disability discrimination in employment.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f), because this matter presents a federal question that arises under a law of the United States.

6. Mr. Martin's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202.

7. Mr. Martin has exhausted his administrative remedies prior to filing this lawsuit. Specifically, Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 29, 2012. He attended an EEOC mediation on August 8, 2012, that did not result in an agreement between the parties. On July 19, 2013, Mr. Martin requested a Right to Sue letter from the EEOC. On November 8, 2013, the EEOC issued Mr. Martin a Right to Sue letter.

8. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b) and (e) and 42 U.S.C. § 2000e-5(f), because (1) the events or omissions giving rise to Mr. Martin's claim for relief occurred in this judicial district, (2) the records relevant to this action are located in this judicial district, (3) Mr. Martin would have continued working for Defendant in this judicial district but for Defendant's unlawful acts, and (4) Defendant's principal places of business are located in this judicial district.

## PARTIES

9. Plaintiff Calvin R. Martin is a resident of Washington, D.C.

10. Defendant RodDon III is one of a number of Virginia limited liability companies with the RodDon name that are owned by either or both Roderick and Donna Isler. Through these RodDon LLCs, the Islers operate HLC learning center franchises at six locations

in Northern Virginia (Lake Ridge, Manassas, Fredericksburg, Stafford, Spotsylvania, and Warrenton), which offer tutoring services for children, including help with school subjects and preparation for standardized tests like the SAT. Defendant RodDon III, which is located at 4118 Bancroft Lane, Woodbridge, Virginia 22192-5130, is the current owner of the Lake Ridge HLC center at which Mr. Martin was employed. Based on information and belief, Defendant RodDon III is owned by Mr. Roderick Isler and operated by both Roderick and Donna Isler.

## FACTS

11. In 1992, Mr. Martin was diagnosed with HIV. HIV is a slowly replicating virus that can lead to acquired immunodeficiency syndrome (AIDS), a condition in humans in which progressive failure of the immune system allows life-threatening infections and cancers to thrive. Unlike some other viruses, the human body cannot get rid of HIV – once a person contracts the virus, he or she has it for life. No safe and effective cure currently exists, but with proper medical care, HIV can be treated so that individuals with the condition can have nearly normal life expectancies and can remain fully productive members of the workforce for decades.

12. In early 2012, Mr. Martin was living in Michigan when he saw a Craigslist advertisement for the Lake Ridge, Virginia RodDon Center Director position and applied.

13. Mr. Martin's past employment includes substitute teaching and work with children as the pastor of a community church. He also formed and directed a non-profit organization dedicated to helping high school students prepare for and apply to college. Given his experience and passion for education, Mr. Martin believed he would be a good fit for the Center Director position at the HLC in Lake Ridge, Virginia.

14. Mr. Martin received an undated "letter of offer" for a position at the HLC center in Lake Ridge, Virginia. The letter stipulated that hours on Mondays through Thursdays

during the school year would be 9:45 am until 8:15 pm, a work day of 10 and a half hours, with a one-half hour of lunch break authorized. The offer included a $200 per month car allowance that would begin after Mr. Martin completed management training. His annual salary as Center Director was to be $45,000. As a condition of employment, Defendant stipulated that Mr. Martin must live in the vicinity of the center in Lake Ridge, Virginia.

15. Mr. Martin accepted the position and relocated from Michigan to Lake Ridge, Virginia to start his new job. He rented an apartment and signed a standard year-long lease for $1,300 per month. Mr. Martin also purchased a car, which Defendant had required him to do as a prerequisite for the job.

16. Mr. Martin began his new position on March 12, 2012, at the HLC center in Lake Ridge, Virginia.

17. Defendant required two different phases of training for employees. The first phase consisted of self-administered computer modules, while the second phase consisted of an in-person, week-long training at HLC Corporate.

18. During his first few weeks on the job, Mr. Martin completed the computer modules that Defendant required for the first phase of his training. Due to his heavy workload, Mr. Martin often had to complete the computer modules late at night after a long workday, or on the weekend. Mr. Martin completed all modules and quizzes in a satisfactory manner.

19. On or about the week of April 22-28, 2012, Mr. Martin and other employees from Defendant's HLC franchises attended the second phase of training, a week-long course at the corporate office of HLC in New Jersey. Mr. Martin performed well at the corporate training.

20. Though his letter of offer stipulated that an average workday was 9:45 a.m. to 8:15 p.m., Monday through Thursday, in reality Mr. Martin often was required to work as many

as 17 hours a day, with additional tutoring events sometimes held on weekends. By early May, Mr. Martin had lost 20 pounds and had trouble sleeping. He became physically exhausted, mentally drained, and generally unwell.

21. On or about May 14, 2012, Mr. Martin had a conversation with Ms. Fowler in which he told her that he needed to lighten his workload for health reasons. When pressed by Ms. Fowler about the nature of his health issues, Mr. Martin disclosed to her, in confidence, that he has HIV and must be careful to maintain his health. Ms. Fowler agreed to make some adjustments to Mr. Martin's schedule and volunteered to handle some of the initial conferences with students and parents. Mr. Martin made clear that this adjustment to his work responsibilities would only be required for a short period of time until he was rested and his health returned to normal.

22. Following this conversation with Ms. Fowler, Mr. Martin's health continued to worsen. Between his conversation with Ms. Fowler on or about May 14, 2012, and his first doctor's visit on or about Wednesday, May 16, 2012, Mr. Martin became very weak and was unable to walk up the stairs in his apartment to get to his bedroom. He developed a fever, suffered from diarrhea and vomiting, and passed out several times.

23. On or about Wednesday, May 16, 2012, Mr. Martin managed to take himself to an urgent care center. The attending physician diagnosed Mr. Martin with a severe case of bronchitis and instructed him to stay home from work for the rest of the week. The doctor also faxed a copy of Mr. Martin's medical report to Defendant to explain that he should stay home from work.

24. On or about Saturday, May 19, 2012, at the doctor's request, Mr. Martin returned for a follow-up visit. The doctor told him that he must rest for the weekend but could

return to work the following week if he felt better. In accordance with the doctor's instructions, Mr. Martin rested over the weekend and informed Ms. Fowler, his supervisor, that he was too ill to attend a scheduled weekend SAT preparation event.

25. On or about Monday, May 21, 2012, Mr. Martin returned to work.

26. On or about the evening of Tuesday, May 22, 2012, Mr. Isler, Ms. Isler, and Ms. Fowler met with Mr. Martin and informed him that he was being fired. The Islers indicated that Ms. Fowler had told them about Mr. Martin's HIV status. They told him that he had lost energy and was not working as hard as he had previously. Mr. Isler expressed to Mr. Martin that it was not acceptable for him to be sick, and explained that they could not continue to employ someone with HIV. During the conversation, the Islers expressed disdain and disapproval for Mr. Martin because of his HIV diagnosis. The Islers did not allow Mr. Martin to collect any of his personal items from his office. Rather, they ordered Mr. Martin to immediately hand over his keys to the office and leave the center.

27. His abrupt termination, and the attitude of his employers, caused Mr. Martin acute distress.

28. On or about May 29, 2012, Mr. Martin filed a Charge of Discrimination with the EEOC. He alleged that he had been fired because of his HIV status.

29. On or about May 31, 2012, Defendant issued a paycheck to Mr. Martin for $874.53 for work performed from April 16, 2012, to May 15, 2012. This paycheck did not fully compensate Mr. Martin and was not commensurate with his agreed-upon salary. Defendant never offered Mr. Martin an accounting or an explanation for the withheld payment.

30. Defendant never paid Mr. Martin for his time worked from May 16, 2012, to May 22, 2012. Defendant never offered Mr. Martin an accounting or an explanation for the

withheld payment. Almost immediately after being fired, Mr. Martin undertook efforts to obtain new employment. However, once Mr. Martin was fired, he was no longer able to afford the rental payments for his apartment.

31. On or about July 31, 2012, Mr. Martin moved out of his apartment, in anticipation of his eviction, due to his inability to afford his rent.

32. On or about August 16, 2012, Mr. Martin's landlord formally evicted Mr. Martin from his apartment.

33. His eviction, together with his abrupt loss of employment and income, caused Mr. Martin ongoing severe physical and emotional distress.

34. In January of 2013, Mr. Martin began work at the General Board of Church & Society of The United Methodist Church in Washington, D.C.

35. On July 19, 2013, Mr. Martin requested a Right to Sue letter from the EEOC.

36. On November 8, 2013, the EEOC sent Mr. Martin a Right to Sue letter.

## CAUSE OF ACTION

### DISCRIMINATORY DISCHARGE THAT VIOLATES THE AMERICANS WITH DISABILITIES ACT

37. Paragraphs 1-36 are incorporated by reference as if set forth herein.

38. Defendant is a "covered entity" under the ADA because it employs 15 or more employees. 42 U.S.C. §§ 12111(2) and 12111(5)(A). The Defendant operates six learning centers in the Northern Virginia area employing a number of teachers at each location in addition to administrative and supervisory staff.

39. Mr. Martin is an individual with HIV. Therefore, he qualifies as an individual with a disability under the ADA and is a member of a protected class as defined by the statute and EEOC regulations.

40. Mr. Martin was qualified for the position of Center Director, underwent HLC training for the position, and received positive feedback during evaluations, training, and from Defendant's clients. He met all of the legitimate expectations of his employer for the position he held.

41. Nevertheless, Mr. Martin was abruptly fired just days after he revealed to his supervisor that he has HIV. When he was fired, Mr. Martin's HIV status was referred to by his employers in a manner indicating that it was the reason for his termination.

42. Defendant's adverse employment action against Mr. Martin was motivated by animus against him due to the fact he has HIV.

43. As such, Mr. Martin's discharge was discriminatory in nature and violates the Americans with Disabilities Act, 42 U.S.C. § 12112(a).

44. Defendant's actions were taken with either malice or with reckless indifference to Mr. Martin's rights under law.

45. As a result of Defendant's actions, Mr. Martin has suffered and will continue to suffer both economic and non-economic losses, emotional distress, and other compensable damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Mr. Martin respectfully requests that this Court enter judgment in his favor and against Defendant and award the following relief:

a. Declaratory relief, including but not limited to a declaration that Defendant's actions violated the ADA;

b. Injunctive relief, including but not limited to enjoining Defendant from engaging in further discriminatory conduct of the nature described in this Complaint;

c. Order Defendant to develop and implement a training program for its employees to ensure no further discrimination occurs against individuals with disabilities;

d. Back pay and/or front pay in an amount to be determined at trial;

e. Compensatory and consequential damages, including for emotional distress;

f. Pre-judgment and post-judgment interest;

g. Punitive damages;

h. Attorney's fees and costs of this action; and

i. Award other such relief as this Court deems appropriate.

TRIAL BY JURY IS DEMANDED

February 4, 2014

Respectfully submitted,

**BEVERIDGE & DIAMOND, P.C.**

_____
Nessa Horewitch Coppinger (Bar No. 65566)
Daniel A. Eisenberg
Stacey J. Sublett
Sara L. Vink
BEVERIDGE & DIAMOND, P.C.
1350 I Street, N.W., Suite 700
Washington, DC 20005
Telephone: (202) 789-6000
Facsimile: (202) 789-6190
ncoppinger@bdlaw.com
deisenberg@bdlaw.com
ssublett@bdlaw.com
svink@bdlaw.com

Daniel Bruner
Heather Wydra
WHITMAN-WALKER HEALTH
1701 14th Street, N.W.
Washington, DC 20009
Telephone: (202) 939-7627

*Attorneys for Plaintiff Calvin R. Martin*